## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **3G WIRELESS, INC., et al.** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **METRO PCS PENNSYLVANIA LLC, et al.** | **:** | **NO.  15-6319** |
| | **:** | |

**KEARNEY, J.**                                                    **February 29, 2016**

### MEMORANDUM

Disappointed business owners often file a lawsuit as leverage to renegotiate or find another business opportunity through resolution.   In doing so, the owners must ensure their lawyers fully present the known facts involving all possible parties.  They cannot sue and sue again striving to find either the right spin on static facts or a judge willing to proceed to trial on a new spin on old facts.   When, as here, the same facts and claims are plead before three courts in three actions with the most recent incarnation here, the business owners should expect we will carefully review the two earlier failed attempts when balancing gamesmanship with providing all aggrieved parties with a day in court.  Plaintiffs fall short in this third try.   In the accompanying Order, we grant Defendants' motions to dismiss as the Plaintiffs' claims are either barred by claim preclusion based on at least one earlier state court dismissal, lack of standing and, as to a new racketeering claim, fails to state a claim.

### I.      FACTS ALLEGED IN THE COMPLAINT

In this latest of their three cases, Plaintiffs re-allege the same facts seeking damages arising from the ending of their business relationship with Defendant MetroPCS Pennsylvania,

LLC ("MetroPCS").[1]   On June 1, 2008, Plaintiff 3G Wireless, Inc. ("3G"), owned by Plaintiff Joseph Cho, and Defendant MetroPCS signed an exclusive dealer contract ("Dealer Contract") allowing 3G to exclusively sell and market MetroPCS cellular and wireless products in defined areas.[2]   MetroPCS required 3G secure retail space leases, government-issued permits and licenses.[3] 3G and its sole owner Joseph Cho spent over $100,000 to comply with the Dealer Contract.[4]  In April 2013, MetroPCS renewed its contract with 3G for another two (2) years.[5]

3G's business model required leasing retail space and hiring associate dealers.  For example, in January 2013, 3G signed a two-year commercial lease for 1415 W. Girard Avenue (the "Girard Location").[6]  At the same time, 3G signed an employment agreement and franchise dealer agreement with Defendant Wonwoo Lee for the Girard Location.[7]   3G also assigned Wonwoo Lee as an associate dealer at the 1016 N. Marshall Street store (the "Marshall Location").[8]  In this position, 3G tied Lee to a non-competition agreement.[9]  In January 2012, 3G signed an employment agreement and franchise dealer agreement with Defendant Eun Kyu Chung for 3G's 231 N. Front Street store (the "Front Street Location").[10]   3G       signed       an employment agreement and franchise dealer agreement with Defendant Samuel Insik Kim for 3G's Hartford, Connecticut store (the "Connecticut location").[11]

As alleged before three courts, 3G's troubles with MetroPCS began in June 2013 and ended in November 2013.   In June 2013, Defendant Chung (then contracted with 3G) met with Defendant Shelton to discuss ending 3G's contract and offering Chung an exclusive MetroPCS dealership agreement for the Front Street Location.[12]  Beginning in October 2013, Defendants Gwang Tae Kim, City Wireless, and MetroPCS, at the direction of the Employee Defendants, contacted all 3G employees including, most notably, Defendants Wonwoo Lee and Chung.[13]  Over the next four months, the Employee Defendants met with Defendants Chung, Wonwoo

2

Lee, Insik Kim, Gwang Tae Kim, and City Wireless (the "Subdealer Defendants") to conspire to terminate the Dealer Contract before it expired in April 2015.[14]  In October 2013, Defendant Wonwoo Lee notified Joseph Cho of leaving his employ at the Girard Location within two (2) weeks.[15]  When asked to explain, Wonwoo Lee admitted secret negotiations with the MetroPCS and the Employee Defendants to: 1) terminate the Dealer Contract for the Girard Location; 2) enter into a new contract with Wonwoo Lee at the Girard Location.[16]  Much the same thing happened concerning Defendant Chung at the Front Location with the added wrinkle of Defendant Chung opening a new store directly next to the 3G Front Street Location.[17]

MetroPCS also allegedly conspired with Defendants Gwang Tae Kim and City Wireless to: 1) terminate 3G's Dealer Contract; 2) sign a new contract with Kim and City Wireless for all six of 3G's locations; and 3) terminate the lease at the Girard Location and evict Plaintiffs.[18] The same thing happened with the Connecticut location.[19]

On November 14, 2013, the Employee Defendants met Joseph Cho and did not deny initiating contact with the other Defendants but stated MetroPCS wished to maintain its relationship with Plaintiffs.[20]  On November 15, 2013, 3G agreed to sell two retail business locations contingent upon MetroPCS approving the assignment of 3G's Dealer Contracts for the locations, which obviously did not happen.[21]  On November 20, 2013, MetroPCS served written notice of its intent to terminate the Dealer Contract requiring 3G to return all merchandise to MetroPCS.[22]  On January 29, 2014, MetroPCS terminated the Dealer Contract.[23]

After MetroPCS terminated the Dealer Contract, 3G signed a Wholesale Agent Agreement with Cellular Central, a T-Mobile master distributor, to sell T-Mobile products.[24] Because T-Mobile was merging with MetroPCS and so as to avoid any potential conflicts, 3G signed this agreement through a new company, Plaintiff Elite Mobile, Inc. ("Elite Mobile"),

3

allegedly with Plaintiff Heather Cho as president and chief shareholder.[25]   Cellular Central cancelled the agreement alleging Elite Mobile never disclosed it had been a MetroPCS dealer.[26] Elite Mobile disagreed claiming Cellular Central knew all along.

## II.     PROCEDURAL BACKGROUND

3G and Joseph Cho first sued MetroPCS and the Subdealer Defendants in the Philadelphia County Court of Common Pleas in December 2013 (the "State Court Complaint").[27] Cho and MetroPCS plead identical causes of action now pled here in Counts V-VIII: tortious interference with contractual relations, civil conspiracy to commit tortious interference with contractual relations; civil conspiracy to commit conversion; and, quantum meruit.  On May 1, 2014, the Honorable Patricia McInerney sustained MetroPCS' preliminary objections and dismissed the state court complaint against MetroPCS only.[28]  The Subdealer Defendants remain parties to the State Court Complaint, now set for a March 2016 settlement conference.

MetroPCS then sued 3G and Joseph Cho who turned around and filed a counterclaim alleging the same facts as in their State Court Complaint, as well as the same claims against MetroPCS (the "State Court Counterclaim").[29]   On November 3, 2014, Judge McInerney dismissed the asserted counterclaims because they failed to state a claim.[30]

On November 20, 2015, two years after MetroPCS terminated the Dealer Contract, 3G and Joseph Cho again sued MetroPCS in this Court with a new lawyer.  They added Elite Mobile and Heather Cho as plaintiffs and the Employee Defendants as parties.  Otherwise, the factual basis is repeated from the two dismissed state court claims:

| Description | Federal Complaint | State Court Complaint | State court Counterclaim |
|---|---|---|---|
| **3G Wireless Contract** | Paragraphs 22-32 | Paragraphs 11-21 | Paragraphs 52-62 |
| **Conspiracy (generally)** | Paragraphs 33-34 | Paragraphs 22-23 | Paragraphs 63-64 |

4

| | Paragraphs 36-37 | Paragraphs 31 and 42 | Paragraphs 73 and 84 |
|---|---|---|---|
| **Conspiracy (Girard location)** | Paragraphs 41-47 | Paragraphs 24-30 | Paragraphs 65-70, and 72 |
| **Conspiracy (Front location)** | Paragraphs 48-51, 53, and 55-56 | Paragraphs 32-38 | Paragraphs 74-80 |
| **Conspiracy (Defendants Gwang Tae Kim and City Wireless Solutions** | Paragraphs 57-58 | Paragraphs 40-41 | Paragraphs 81-82 |
| **Conspiracy (Hartford Location)** | Paragraphs 59-63 | Paragraphs 43-47 | Paragraphs 85-89 |
| **Conspiracy (RICO)** | Paragraphs 64-67, and 69-72 | Paragraphs 48-55 | Paragraphs 90-95, and 100-102 |
| **Conspiracy (to subvert Elite Mobile)** | Paragraphs 73-80 | | Paragraphs 108-116 |

In the suit here, 3G and MetroPCS also repeated the same legal claims but, for good measure, cloaked the facts with new claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").  3G's counsel concedes his clients could have brought this same legal theory in state court, but elected not to do so.   Otherwise, the legal claims already twice dismissed by the esteemed Judge McInerney in the Court of Common Pleas are repeated hoping a third attempt will succeed:

| Description | Federal Complaint | State Court Complaint | State Court Counterclaim |
|---|---|---|---|
| **Tortious interference with contractual relations** | Count V; paragraphs 23-24, and 113-116<br><br>Count IX; paragraphs 132-135 | Count I; paragraphs 56-59 | Count I; paragraphs 117-120 |
| **Civil conspiracy to commit tortious interference with contractual relations** | Count VI; paragraphs 117-120<br><br>Count X; paragraphs | Count II; paragraphs 60-63 | Count II; paragraphs 121-124 |

| | 136-140 | | |
|---|---|---|---|
| **Civil conspiracy to commit conversion** | Count VII; paragraphs 121-127 | Count III; paragraphs 64-66 | Count III; paragraphs 124-127 |
| **Quantum meruit** | Count VIII; Paragraphs 128-131   Count XI; paragraphs 141-144 | Count IV; paragraphs 67-70 | Count IV; paragraphs 128-131 |

## III.   ANALYSIS

### A. We grant the MetroPCS Defendants' motion to dismiss.

The MetroPCS Defendants move to dismiss arguing the claims as to them are barred by claim or issue preclusion or otherwise fail to state a claim.[31]  At the initial pretrial conference, we asked whether Heather Cho had standing to pursue claims where the injury accrued to her company, Elite Mobile.   We asked Plaintiffs' counsel to address the concern in his response brief, but counsel chose not to do so.  Having evaluated the facts and the caselaw, we first find Heather Cho does not have standing to pursue claims for injuries to her corporation, Elite Mobile.  Second, we dismiss all claims asserted against the MetroPCS Defendants based on claim preclusion.  Accordingly, we grant the MetroPCS Defendants' motion and dismiss their third bite at the apple with prejudice.

#### *i.* **Joseph and Heather Cho lack standing to assert claims for injuries sustained by their respective companies.**

Standing is a fundamental threshold issue requiring the court's "initial attention."[32]  The standing inquiry involves both Article III limitations, as well as prudential limitations.[33]  To satisfy Article III's "case and controversy" requirement, a party must have suffered an "injury in fact", causally connected to the defendant's conduct, and likely to be "redressed by a favorable

decision."[34]   Prudential standard requires a litigant to assert his or her own legal rights rather than those of third parties.[35]

A corporation is a distinct and separate entity, irrespective of the ownership of the stock, and the fact that one person owns all its stock does not make him and the corporation one and the same.[36]   And a stockholder of a corporation does not acquire standing to maintain an action in his own right when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is indirect harm consisting of the diminution in value of his corporate shares.[37]   "In Pennsylvania the general rule is that an action to redress injuries to the corporation cannot be maintained by an individual shareholder, but must be brought as a derivative action in the name of the corporation."[38]

Even after we expressed our concern over this issue at the pretrial conference, Plaintiffs' counsel failed to argue why Heather Cho has standing to pursue claims on behalf of Elite Mobile.   While she may be the president and shareholder of Elite Mobile, she asserts no facts indicating she suffered an injury in fact other than the "diminution in value" of her corporate stock.[39]   Heather Cho is dismissed.

While we did not address Joseph Cho's standing at the initial pretrial conference, it is worth discussing briefly.   Joseph Cho alleges, and attaches the document showing, he is a party to the lease for the Girard Location.[40]   Accordingly, Joseph Cho has standing to only pursue claims for damages to his leasehold interests but not to 3G.

### ii.   Claim preclusion bars all claims against the MetroPCS Defendants.[41]

Claim preclusion, or *res* judicata, is a doctrine by which a "former adjudication bars a later actions on all or part of the claim which was the subject of the first action."[42]   Claim preclusion applies where a court issues a final judgment on the merits.[43]   "Res judicata applies

not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action."[44]   "Under Pennsylvania law, claim preclusion turns on whether the underlying events giving rise to the legal claims asserted are essentially similar."[45]  Federal courts are required to "give the same preclusive effect to the judgment in the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered would give."[46]

Pennsylvania courts require the two actions share the: thing sued upon or for; cause of action; persons and parties to the action; and, capacity to sue or be sued.[47]  "[T]he purpose of this doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications."[48]

Plaintiffs do not necessarily challenge all of the above requirements.   Rather, they challenge whether the causes of action are substantially similar, the parties are the same or in privity, and whether the state courts issued final judgments on the merits in the two state court cases.

"In determining whether the same cause of action is involved, the courts look to 'essential similarity of the underlying events giving rise to the various legal claims."[49]  "The fact that new theories of recovery find their way into the second action will not prevent claim preclusion where the underlying similarities exist."[50]  Claim preclusion will not be "defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose,—a second trial on the same cause between the same parties."[51]  "The focal point of the 'same cause of action' analysis is not whether there are new facts occurring after the final judgment, but whether the *material* facts alleged in each suit are the same, and whether the witnesses and documentation required to prove the allegations are the same."[52]

In *Foster,* the plaintiff brought suit for fraud, RICO and related commercial tort claims relating to a real estate transaction in both this Court and the Philadelphia Court of Common Pleas.[53]  The district court dismissed the complaint for failure to state a RICO claim.[54]   Three years later, plaintiff brought another RICO and state law lawsuit alleging ongoing conduct after the earlier judgment.[55]  Our court of appeals affirmed the dismissal of the second case finding the "continuation of the same fraudulent activity" did not raise a new cause of action as the material facts in each suit were the same.[56]

In *Richard Johnson Honeyshine Shoe Exp. Services*, plaintiff filed an anti-trust, civil rights and commercial tort suit claiming Amtrak, in managing 30th Street Station, terminated his company's lease and allowed a competitor to open for more rent.[57]  This court dismissed the action.[58]  Plaintiff also filed suit in the Philadelphia Court of Common Pleas alleging defendants breached his lease contract.[59]  The state court dismissed his case.[60]   Almost two years later, plaintiff filed a second action here with the same facts but also asserting RICO allegations.[61]  As "[b]oth actions would require the same witnesses and documentation in order to establish the same facts", Judge Robert Kelly applied claim preclusion and dismissed the second action.[62]  Judge Kelly further found, applying Pennsylvania law on claim preclusion, the judgment in state court barred plaintiff from raising issues in the second federal case which he could have raised in state court.[63]

We first start with the identity of the parties who are substantially similar.  Here, 3G, Joseph Cho, MetroPCS, and the Subdealer Defendants were all parties to the State Court Complaint.  The complaint here adds the Employee Defendants, Elite Mobile, and Heather Cho.  The addition of any of these parties does not save the case.[64]  The Employee Defendants are in privity with their employer MetroPCS.[65]   Similarly, new plaintiff Elite at the very least has a

9

"close or significant relationship" with 3G and Joseph Cho.[66]   In the State Court Counterclaim, Joseph Cho alleged he "operated as a T-Mobile dealer at his Two (2) stores as a Pennsylvania corporation named Elite Mobile [ ]."[67]   He further alleged he "spent considerable sums of money to properly renovate the Front Street location in order to successfully represent T-Mobile."[68]   Accordingly, we find the privity requirement is met as Elite Mobile, the non-party, was "'adequately represented by someone with the same interests who [wa]s a party.'"[69]   The parties are therefore substantially similar.

Plaintiffs 3G and Joseph Cho bring four RICO counts (Counts I-IV) along with four state common law claims for tortious interference with contractual relations, conspiracy to commit tortious interference with contractual relations, civil conspiracy to commit conversion, and quantum meruit.[70]   Here, the facts alleged in the State Court Complaint, the State Court Counterclaim, and now this federal complaint are almost copied *verbatim*.[71]   The only additional claims, based on the same facts, are the RICO claims and claims asserted by Elite Mobile.

But state courts have concurrent jurisdiction over RICO claims, and as such the RICO claims could have been brought in the State Court Complaint or the State Court Counterclaim.[72]   In *Schneler*, Judge Stengel of this court dismissed newly pleaded RICO claims as barred by claim preclusion.[73]   There, after the state court dismissed the plaintiff's claims on preliminary objections, the plaintiff filed RICO claims here.[74]       Finding the preliminary objections constituted a final judgment on the merits, Judge Stengel dismissed the RICO claims as based on the identical facts presented in the state court action.[75]   The "plaintiff could have brought his RICO claim as part of the 2007 action and is precluded from raising the RICO claim now based on the same facts."[76]

10

Moreover, the four state common law claims asserted by 3G and Joseph Cho against the MetroPCS Defendants are the identical claims asserted against MetroPCS in both the State Court Complaint and the State Court Counterclaim.   Finally, the claims asserted by Elite are substantially similar to those brought in the State Court Counterclaim, with some additional facts.  Yet, these additional facts were static.  In other words, they occurred before judgment on the State Court Counterclaim and thus, are not new claims.

The thing to be sued for in each case is identical.  For example, in the State Court Complaint and State Court Counterclaim, 3G and Joseph Cho seek damages for "the value of each retail business, capital investment and business income, in addition to the substantial damage that has been caused to 3G's reputation and business goodwill within the competitive wireless industry . . . ."  As shown, Joseph Cho lacks standing for this claim, even on the third try.[77]  Plaintiffs have not sought anything they did not seek in state court, including remedies for the injury to Elite Mobile.

Next, Plaintiffs argue neither the May 1, 2014 Order sustaining MetroPCS' preliminary objections, nor the November 3, 2014 Order again sustaining MetroPCS' preliminary objections are 'final judgments on the merits" required for claim preclusion.[78]  Even if we were to agree the May 1, 2014 Order does not constitute a final adjudication on the merits, the subsequent November 3, 2014 Order dismissing the identical claims is preclusive.  "Under Pennsylvania law, where the court sustains a demurrer and dismisses a complaint, such an order is final and appealable."[79]  If not appealed, the order becomes *res judicata*.[80]  Judge McInerney's November 3, 2014 Order dismissed the claims because 3G and Joseph Cho failed to state a claim.[81]  It is not the case where it is unclear the grounds on which Judge McInerney dismissed the claims.

Plaintiffs did not appeal the November 3, 2014 dismissal order and it became final.  Accordingly, the November 3, 2014 dismissal order is given preclusive effect in this litigation.

The MetroPCS Defendants satisfied all requirements of claim preclusion and are entitled to have the claims against them dismissed with prejudice.

### B. We also grant the Subdealer Defendants' motion to dismiss the new RICO claims.

The Subdealer Defendants move to dismiss the complaint in favor of the State Court Complaint still pending against them in the Philadelphia Court of Common Pleas.  They cite the "first-filed rule" to support their position.  The first-filed rule applies "[i]n all cases of federal concurrent jurisdiction."[82]  At the initial pretrial conference, we stated the first-filed rule might not apply and instead, asked Plaintiffs to focus on "the effect of ongoing claims in state court under an abstention doctrine."[83]  Plaintiffs' response to the Subdealer Defendants' motion only discussed the abstention principle espoused in *Younger v. Harris*, 401 U.S. 37 (1971), ostensibly because we mentioned this case at the initial pretrial conference.  We recognize *Younger* abstention does not apply here, but we explore whether we should exercise jurisdiction under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

### i. *Colorado River* does not apply.

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the federal court having jurisdiction."[84]  Rather both cases proceed until one reaches a judgment which may have preclusive effect on the other action.[85]  The *Colorado River* abstention doctrine provides under "exceptional circumstances, a federal court may abstain from its otherwise 'virtually unflagging obligation' to assert jurisdiction over a because (1) there is a parallel case in state court, and (2)

after 'careful[ly] balancing' a series of factors 'heavily weighted in favor of the exercise of jurisdiction,' maintaining the federal case would be a waste of judicial resources."[86]

We first examine whether the two pending cases are parallel. "Parallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'"[87] Much like our analysis on claim preclusion, the addition of the RICO claims does not necessarily negate the identical nature of the cases.[88] Where a claim could have been brought in the state court complaint, "the cases are . . . not meaningfully different."[89] The only remaining parties are Plaintiffs 3G and Joseph Cho, along with the Subdealer Defendants, who are all parties to the State Court Complaint. Additionally, 3G and Joseph Cho bring the identical state court common law claims with two new RICO claims against the Subdealer Defendants. It appears as though the cases are parallel for purposes of *Colorado River* abstention.

Yet, we must still clear a much higher hurdle: the careful balancing of the relevant factors "heavily weighted in favor of the exercise of jurisdiction."[90] Placing a "thumb on the scales in favor of granting jurisdiction", we consider the six relevant factors: (1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.[91]

The first, second, and fifth factors do not tip the scales in either direction. Neither the state nor federal actions involve *in rem* jurisdiction. Next, all of the parties are local and the federal forum is not inconvenient. Further, given the presence of both federal and state law claims, governing law is not determinative.[92]

Generally, there is a strong policy in avoiding piecemeal litigation. However, "the mere possibility of piecemeal litigation" cannot justify *Colorado River* abstention, absent "a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." [93]If it were the case that mere "possibility of concurrent state-federal litigation satisfies *Colorado River's* piecemeal adjudication test, the test becomes so broad it swallows up the century old principle expressed in *University of Maryland*" holding the pendency of an action in state court is generally not a bar to proceedings concerning the same matter in federal court.[94] Aware of no applicable congressional policy, we find this factor does not weigh in favor of abstention.

The remaining factors also do not require abstention.[95]  Whether the state court will adequately protect the interests of the parties is generally a "one-way ratchet." [96]In other words, it only serves to "weigh *against* abstention where a state court is incapable of protecting a party's interests." [97]  With no indication the state court cannot adequately protect the parties' interests, this factor is attributed no weight.  Second, the fact Cho filed the State Court Complaint first and it has proceeded for some time now is the only factor weighing in favor of abstention.  Given this, we cannot conclude this fact portion presents the requisite "exceptional circumstances" justifying *Colorado River* abstention.[98]  Balancing these factors while "heavily weighted in favor of the exercise of jurisdiction", we conclude abstention under *Colorado River* is not appropriate.[99]

### ii. Plaintiffs do not state a RICO claim upon which relief may be granted against the Subdealer Defendants.

Plaintiffs' remaining claim is for RICO against the Subdealer Defendants. We dismiss this RICO claim as Plaintiffs cannot state a RICO claim as a matter of law.

3G, Joseph Cho, and Elite Mobile bring RICO claims against the Subdealer Defendants under 18 U.S.C. § 1962(c), (d).  To successfully plead RICO under § 1962(c), they must allege the Subdealer Defendants: (1) conducted; (2) an enterprise; (3) through a pattern; (4) of racketeering activity; (5) resulting in damage to plaintiff's business or property.[100] "Racketeering activity" is defined in the statute to mean "any act or threat involving specified state law crimes, any act indictable under various specified federal statutes, and certain federal offenses."[101]   A "pattern of racketeering activity" is defined to mean "at least two acts of racketeering" within the last ten years.[102]

> Chief Judge Tucker aptly summarizes required pleadings of a RICO claim:
>
> Racketeering activity forms a pattern where the racketeering activities are "related, and that they amount to or pose a threat of continued ... activity. Relatedness is demonstrated when racketeering predicates have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events. Continuity is a closed—and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.   The RICO statute defines "racketeering activity" to include, *inter alia,* acts that are indictable under 18 U.S.C. § 201 (relating to bribery), 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1503 (relating to obstruction of justice) and 18 U.S.C. § 1512 (relating to witness tampering). Where the allegations of the complaint, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate.[103]

Plaintiffs seemingly rely on two federal statutes as their "pattern of racketeering" occurring over the course of three months.[104]  "The Third Circuit has held that conduct lasting less than twelve months does not establish closed continuity." [105]  Plaintiffs cannot establish closed continuity as the harm, in *toto*, does not exceed six (6) months.

Where the predicate acts occur closer together, a plaintiff can establish open-ended continuity by "showing that the commission of the acts is the entity's 'regular way of doing business' or 'that the racketeering acts themselves include a specific threat of repetition

extending indefinitely into the future.'"[106]   Plaintiffs fall woefully short of pleading facts supporting an open-ended theory of continuity. ˈ All of the acts occurred between October 2013 and January 2014.   They do not allege either the MetroPCS Defendants or the Subdealer Defendants regularly conducted business in this manner.[107]   Plaintiffs did not allege a specific threat of repetition extending into the future.   As we read the allegations, the parties no longer have a relationship.   As the Supreme Court stated, "Congress was concerned in RICO with long-term conduct."   [108]   We accordingly dismiss the Plaintiffs' remaining RICO claims against the Subdealer Defendants.

## IV.   CONCLUSION

Joseph Cho exhausted his leverage in the Court of Common Pleas and his continuing efforts to find a claim fail.   His, and his affiliates', claims have either been dismissed before or fail to state a claim.   We grant Defendants' motions to dismiss in the accompanying Order.

---

[1]  In this federal complaint, Plaintiffs are also suing Defendants John Shelton, Louis Peltzer, Brian Bromberg, and Michael O'Shea.   Plaintiffs allege these individual are MetroPCS employees so to the extent we refer to them collectively, we will call them the "Employee Defendants."   When we refer to both MetroPCS and the Employee Defendants, we refer to them the "MetroPCS Defendants."

[2]  (ECF Doc. No. 1, at ¶ 22.)

[3]  (*Id.* at ¶ 24.)

[4]  (*Id.* at ¶ 26.)

[5]  (*Id.* at ¶ 32.)

[6]  (*Id.* at ¶ 33.)

[7]  (*Id.* at ¶ 34.)

[8] (*Id.* at ¶ 35.)

[9] (*Id.*)

[10] (*Id.* at ¶ 36.) It is unclear if this date is supposed to be January 2013 as all the other dates are.

[11] (*Id.* at ¶ 37.)

[12] (*Id.* at ¶ 38.)

[13] (*Id.* at ¶ 39.)

[14] (*Id.* at ¶ 40.)

[15] (*Id.* at ¶ 45.)

[16] (*Id.* at ¶ 46(a)-(d).)

[17] (*Id.* at ¶ 55(e).)

[18] (*Id.* at ¶ 57.)

[19] (*Id.* at ¶¶ 59-63.)

[20] (*Id.* at ¶¶ 65-66.)  While not presently before us, the MetroPCS Defendants attached Plaintiff Joseph Cho's February 5, 2016 deposition transcript in which he admitted MetroPCS never told him they wanted to continue doing business with him at the November 2013 meeting.  (ECF Doc. No. 40, at 8 n.2)  This admission directly contradicts his facts plead under Fed.R.Civ.P. 11.  What is more surprising and troubling is Plaintiffs' counsel represented him in the deposition where he admitted this fact, and then continued to assert this fact as true in Plaintiffs' response to the MetroPCS Defendants' motion.  Counsel has a duty not to "make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  Pa.R.P.C. 3.3(a)(1) (adopted by the United States District Court for the Eastern District of Pennsylvania by Local Rule 83.6 Rule IV(B)).  While this fact has no bearing on our decision today, we remind Plaintiffs' counsel of his duty of candor and our Court's diligent review of counsel's conduct. *See Hawthorne v. Municipality of Norristown, et.al.,* No. 15-1572, 2016 WL 454401 at *1, *8 (E.D.Pa. Feb. 5, 2016).

[21] (*Id.* at ¶¶ 71-72.)

[22] (*Id.* at ¶ 67.)

[23] (*Id.* at ¶ 68.)

[24] (*Id.* at ¶ 75.)

[25] (*Id.* at ¶ 74.)

[26] (*Id.* at ¶ 78.)

[27] (ECF Doc. No. 28, Def's Mot. to Dismiss, at 3; Ex. A.)

[28] (*Id.* at Ex. B.)

[29] (*Id.* at Ex. C.)

[30] (*Id.* at Exs. D & E.)

[31] (ECF Doc. No. 28)

[32] *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 347 (3d Cir. 2001) (citing *Valley Forge Christian College v. Americans United for the Separation of Church & State, Inc.*, 454 U.S. 464, 461-74 (1982).

[33] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[34] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

[35] *Warth*, 422 U.S. at 499.

[36] *United Nat'l Ins. Co. v. M. London, Inc.*, 487 A.2d 385, 391-92 (Pa. Super. Ct. 1985).

[37] *Winer Family Trust v. Queen*, 503 F.3d 319, 338 (3d Cir. 2007) (citing *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970)).

[38] *John L. Motley Assocs., Inc. v. Rumbaugh*, 104 B.R. 683, 686 (E.D. Pa. 1989).

[39] *Winer Family Trust*, 503 F.3d at 338.

[40] (ECF Doc. No. 1, at ¶¶ 9, 17, 33, & Ex. B)

[41] State law and federal law applied in this circuit regarding *res judicata* are not inconsistent and thus federal court opinions may provide guidance. *See First Options of Chicago, Inc. v. Kaplan*, 913 F. Supp. 377, 383 n.8 (E.D. Pa. 1996) (citing cases).

[42] *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995).

[43] *R/S/ Fin. Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (1998).

[44] *Id.*

[45] *Russo v. City of Phila.*, 819 F. Supp. 2d 405, 413 (E.D. Pa. 2011).

[46] *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (citing *Lance v. Dennis*, 546 U.S. 459 (2006)).

[47] *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (1974) (citations omitted).

[48] *Balent*, 669 A.2d at 315.

[49] *Richard Johnson Honeyshine Shoe Exp. Servs. v. U.S. Equity Realty, Inc.*, 125 F. Supp. 2d 695, 698 (2000).

[50] *Id.* at  313.

[51] *Tobias v. Halifax Twp.*, 28 A.3d 227 (Pa. Commw. Ct. 2011).

[52] *Foster v. Denenberg*, 616 F.App'x. 472, 474 (3d. Cir. 2015)(emphasis in original) (citing *United States v. Athlone Indus., Inc.*, 747 F.2d 977, 984 (3d Cir. 1984)).

[53] 616 F. App'x at 473.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 475.

[57] 125 F. Supp. 2d at 697-98.

[58] *Id.*

[59] *Id.* at 698.

[60] *Id.*

[61] *Id.* at 697.

[62] *Id.* at 698-99.

[63] *Id.* at 699.

[64] *See Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988) ("The essence of the cause of action . . . is not altered by the addition of more parties.")

[65] *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 n.11 (3d Cir. 2006) ("Pennsylvania courts apply the doctrine of res judicata 'to different parties where one is

vicariously responsible for the conduct of another, such as principal and agent or master and servant.'" (quoting *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1317 (1983)).

[66] *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991).

[67] (ECF Doc. No. 28, Ex. C, at ¶ 111.)

[68] (*Id.* at ¶ 113.)

[69] *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009) (quoting *Taylor v. Sturgell*. 553 U.S. 880, 894 (2008)).

[70] (ECF Doc. No. 1)

[71] *See Schneler v. Zitomer*, No. 13-4370, 2015 WL 115569, *5 (E.D. Pa. Jan. 8, 2015).

[72] *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (holding state courts have concurrent jurisdiction over RICO claims); *McCarter v. Mitcham*, 883 F.2d 196, 198-201 (3d Cir. 1989) (dismissing a case "asserting essentially identical claims" as a dismissed state court action, "but pleading them as claims arising under the [RICO] Act").

[73] 2015 WL 115569, at *5.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] (ECF Doc. No. 28, Ex. A, at ¶¶ 59, 63, 73; Ex. C, at ¶¶ 120, 124, 136)

[78] (ECF Doc. No. 39-2, at 6-8)

[79] *Joell v. Northwestern Human Servs.*, No. 13-3549, 2013 WL 5823738, *4 (E.D. Pa. Oct. 29, 2013) (citation omitted).

[80] . *See Rouse v. II-IV, Inc.*, No. 06-566, 2007 WL 1007925, *5 (W.D. Pa. Mar. 30, 2007) (citing *United States National Bank v. Johnson*, 487 A.2d 809, 813 (Pa. 1985)).

[81] (ECF. Doc. No. 28, Ex. D)

[82] The Subdealer Defendants state the first-filed rule applies "not only federal court to federal court, but also federal court to state court." (ECF Doc. No. 29-2, at 5-6.) They then cite an Eleventh Circuit case they allege applies the first-filed rule to state courts. *See Merrill Lynch,*

*Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1172 (11th Cir. 1982).  The Subdealer Defendants allege our court of appeals adopted this approach.  To the contrary, our Court of Appeals never cited this case. *Equal Emp't Opportunity Comm'n v. Univ. of Penna.*, 850 F.2d 969, 971 (3d Cir. 1988).

[83] (ECF Doc. No. 35, at ¶ 2.)

[84] *Colorado River*, 424 U.S. at 817.

[85] *Univ. of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265, 275-276 (3d Cir. 1991).

[86] *Golden Gate Nat'l Senior Care, LLC v. Minich ex rel. Estate of Shaffer*, —F. App'x—, No. 14-4459, 2015 WL 6111426, *1 (3d Cir. Oct. 16, 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 13-16 (1983)).

[87] *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (quoting *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003)).

[88] *See Leonard v. Educators Mut. Life Ins. Co.*, No. 04-5310, 2005 WL 1041188, *2 (E.D. Pa. May 5, 2005).

[89] *Id.* (citation omitted).

[90] *Golden Gate*, 2015 WL 6111426, at * 1.

[91] *Id.* at *2 (citing *Nationwide*, 571 F.3d at 307-08).

[92] Even though we are dismissing the federal RICO claims brought against the Subdealer Defendants, "abstention cannot be justified merely because a case arises entirely under state law." *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (citing *Moses H. Cone*, 460 U.S. at 26).  There are no novel issues of state law involved which would lean towards exercising abstention. *Id.*

[93] *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997).

[94] *Id.*

[95] While we are not abstaining from jurisdiction under *Colorado River,* we cannot help but comment on the completely unnecessary nature of this filing.  Plaintiffs' counsel is not in agreement with prior counsel's strategy.  Examining the state court docket and from the parties' submissions here, his concern is understandable.  However, poor management by a previous attorney does not give Plaintiffs' new attorney the ability to replead the same suit in different wrapping paper in a different court.

[96] *Golden Gate*, 2015 WL 6111426, at *4.

[97] *Id.* (emphasis in original).

[98] *Moses H. Cone*, 460 U.S. at 19.

[99] *Id.* at 19.

[100] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[101] *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (internal citations and quotations omitted).

[102] § 1961(5).

[103] *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 427 (E.D. Pa. 2014) (internal citations and quotations omitted).

[104] Plaintiffs allege conduct beginning in June 2013. However, the first alleged predicate act (i.e. mail and wire fraud) occurred in October or November.

[105] *O'keefe v. Ace Restaurant Supply, LLC*, No. 11-1330, 2016 WL 127566, *4 (E.D. Pa. Jan. 12, 2016) (citing *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995)).

[106] *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242.).

[107] *Foster*, 616 F. App'x at 475 (affirming dismissal of RICO claims for failure to meet "continuity" pleading requirement)

[108] *H.J. Inc.*, 492 U.S. at 242.